### BRUCE CAHN *v.* FLORENCE CAHN
### (14523)

PETERS, C. J., BORDEN, BERDON, NORCOTT and SANTANIELLO, Js.

Argued January 12—decision released June 1, 1993

*William H. Narwold,* with whom were *Laura Welch Ray* and, on the brief, *C. Ian McLachlan* and *David D. Legers,* for the appellant (defendant).

*Sheldon A. Rosenbaum,* with whom, on the brief, was *Melinda S. Monson,* for the appellee (plaintiff).

SANTANIELLO, J. The question posed by this certified appeal[1] is whether the Appellate Court properly concluded that the mere filing of a motion for protective order by a nondeponent is a sufficient basis to exclude deposition testimony from evidence because the deposition was taken before the motion was heard. During the trial of the dissolution action filed by the plain-

---

[1] The defendant's petition for certification, filed pursuant to Practice Book § 4126, was granted by the Supreme Court. *Cahn* v. *Cahn,* 221 Conn. 924, 608 A.2d 688 (1992).

tiff, Bruce Cahn, the defendant, Florence Cahn, gave notice of the depositions of three nonparty witnesses. Although the plaintiff thereafter filed a motion for protective order, the depositions were taken before the motion was heard and without the plaintiff being in attendance. The defendant now appeals the decision of the Appellate Court upholding the ruling of the trial court excluding the deposition testimony from evidence. We affirm.

The facts relevant to this appeal are as follows.[2] Beginning in 1982, when the plaintiff had unsuccessfully attempted to obtain a divorce from the defendant in New York, the parties had been involved in contentious domestic litigation both in Connecticut and New York. The defendant had been responsible for delaying a subsequent dissolution action filed in Connecticut by failing to appear in court and by ignoring recommendations from the court. That action was withdrawn in 1987. *Cahn* v. *Cahn,* 26 Conn. App. 720, 721–23, 603 A.2d 759 (1992).

In February, 1989, the plaintiff instituted the present action in Connecticut. The parties were notified on May 10, 1990, that the action had been scheduled for trial on July 5 and 6, 1990. *Cahn* v. *Cahn,* supra, 723. "On July 5, counsel for the defendant appeared without the defendant. The court assigned this case [to another judge] for a pretrial conference to determine if settlement was possible. The pretrial failed and the court instructed both sides to return the following day. The defendant did not appear on the morning of July 6, 1990, and the trial began without her. The defendant telephoned to state that she would be in court by the

---

[2] We adopt the factual recitation set out in the Appellate Court opinion, *Cahn* v. *Cahn,* 26 Conn. App. 720, 603 A.2d 759 (1992), and include here only those facts necessary to place the issue before us in context and to resolve it.

afternoon of July 6 and that she did not object to the trial continuing without her. The defendant arrived at approximately 3 p.m. that afternoon. The plaintiff was testifying when the defendant arrived in court. The court then allowed the defendant to take the stand out of order because the defendant claimed that she was having medical difficulties that could require surgery and prevent her from being present in court at a future date. The parties were not able to conclude the trial on July 6, 1990.

"After conferring with the parties, the court decided to continue the case until July 24, 1990. The defendant told the court that she had scheduled a medical procedure for July 23, 1990. The court told her that she should reschedule the procedure because the trial 'took precedence.' On July 24, the defendant again did not appear. Counsel for the defendant stated that she underwent medical procedures and was advised by her physicians not to travel for seven to ten days. Counsel for the defendant sought a continuance, which was granted, to September [14], 1990. The court ordered the defendant's counsel to bring a letter from the physician who performed the medical procedures for the defendant stating the reasons why the defendant could not be present in court on July 24 and whether these medical procedures were emergency procedures. On September 14, 1990, the defendant again did not appear in court. Counsel for the defendant presented a photocopy of a letter from the defendant's physician. According to the defendant's counsel, the physician met with the defendant on September 12, 1990, and faxed a letter to the defendant's counsel. The physician recommended that the defendant should not travel at this time and would need another eight weeks to recuperate. There was no response concerning whether the medical procedure performed on July 23, 1990, was an emergency procedure. The court ordered the defend-

ant's counsel either to produce the treating physician for testimony on this procedure or to bring in a sworn affidavit that the defendant was physically incapable of being in court. The court also allowed the plaintiff to arrange for a physician of his choice to examine the defendant. The court then stated on the record that she felt that the defendant was delaying the resolution of this case. The court warned the defendant's counsel that if the defendant failed to show up on November 9, 1990, the court would grant the dissolution and make all related financial orders effective on that date.

"On October 22, 1990, counsel for the defendant notified the plaintiff's counsel that depositions of three witnesses for the defendant were scheduled on October 31, 1990, in New York. On October 25, 1990, the plaintiff's counsel mailed to the clerk's office a motion for protective order to prevent the deposition of these nonparty witnesses. The motion arrived at the clerk's office and was filed on Monday, October 29, 1990. The court noted that because the motions docket was heard on Mondays, there could not have been a hearing until the following Monday at the earliest. The defendant's counsel called the plaintiff's counsel on October 31. The defendant's counsel proceeded with the depositions after the plaintiff's counsel stated that he was not coming to New York. The New York witnesses were the defendant's treating physician and two psychotherapists.

"The court refused to admit these depositions as a substitute for live testimony. The court found that it would be prejudicial to the plaintiff to admit these depositions because the plaintiff was not present to cross-examine the defendant's witnesses. The court reasoned that because of the defendant's scheduling, the plaintiff was prevented from being heard on this motion for a protective order before the depositions took place in New York. The court felt that these depositions should

have been scheduled earlier so as to allow the plaintiff to first be heard on his motion for a protective order." *Cahn* v. *Cahn*, supra, 723–26.

"In an appeal following certification, the focus of our review is not the actions of the trial court, but the actions of the Appellate Court." (Internal quotation marks omitted.) *Essex Leasing, Inc.* v. *Zoning Board of Appeals*, 206 Conn. 595, 599, 539 A.2d 101 (1988); see also *Nardini* v. *Manson*, 207 Conn. 118, 119–20 n.1, 540 A.2d 69 (1988). In upholding the decision of the trial court, the Appellate Court stated that the notice provided by the defendant was not reasonable. *Cahn* v. *Cahn*, supra, 728–29. "[A] deposition . . . may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof . . . ." Practice Book § 248. The plaintiff was neither present nor represented by counsel at the depositions. The Appellate Court ruled that the notice provided to the plaintiff was not reasonable because it did not allow the plaintiff sufficient time to argue his motion for protective order. *Cahn* v. *Cahn*, supra.

The defendant argues that the notice must merely be sufficient to afford a party an adequate opportunity to attend the deposition and cross-examine the deponent. In her view, there is no requirement that the notice be given far enough in advance of the deposition to afford the other party sufficient time to file a motion for protective order and to have that motion heard.

The defendant contends that the Appellate Court's ruling is contrary to our holding in *Pavlinko* v. *Yale-New Haven Hospital*, 192 Conn. 138, 470 A.2d 246 (1984). In *Pavlinko*, the plaintiff, who was also the deponent, was present at the deposition and had never sought a protective order to limit the allowable areas of inquiry at the deposition. He refused, however, to

answer certain questions. Id., 143. In holding that a plaintiff cannot use the privilege against self-incrimination to deny a defendant information to which the defendant is entitled, we stated that "[a]ll questions, including those objected to, are to be answered . . . unless the objecting party procures from the court a protective order precluding or limiting the scope or disclosure of discovery." Id. The issue in *Pavlinko* was the plaintiff-deponent's conduct at the deposition.[3] The issue before the Appellate Court and this court, however, is whether, in the circumstances of this case, a notice of deposition subsequently ruled unreasonable because the notice did not allow the plaintiff to be heard on his motion for protective order permits a court to exclude the deposition testimony from the trial. The holding of the Appellate Court in this case, therefore, is not inconsistent with our holding in *Pavlinko* v. *Yale-New Haven Hospital,* supra.

The defendant next claims that the plaintiff could have requested a continuance and, because he did not do so, she argues that we should not review this claim.[4] In *Kevin Roche-John Dinkeloo & Associates* v. *New Haven,* 205 Conn. 741, 535 A.2d 1287 (1988), we declined to review a claim of error where a witness whose identity was not disclosed until after five weeks of trial was allowed to testify even though the defendant had not been given an opportunity to depose the witness until the night before he was scheduled to testify. Id., 748. The defendant in that case, however, had not requested

[3] In *Pavlinko* v. *Yale-New Haven Hospital,* 192 Conn. 138, 142–43, 470 A.2d 246 (1984), we upheld the granting of the defendant's motion to dismiss the plaintiff's action after the plaintiff refused to respond to the defendant's deposition questions and never indicated any willingness to answer those questions at any time prior to the entry of the judgment of dismissal.

[4] The defendant also challenges the merits of the motion for protective order. Whether the court would have granted the motion for protective order is not properly before this court and we do not consider that issue.

a continuance and, because the witness testified at trial, the defendant had an opportunity to cross-examine the witness. Id. Although the plaintiff here did not request a continuance of the already protracted trial, he did file a motion for protective order. Filing such a motion was a viable means available to him to prevent the depositions from occurring.

The question remains, however, whether the plaintiff took reasonable steps to expedite a hearing on the motion for protective order. The motion is dated October 25, 1990. Rather than delivering the motion to the clerk's office on Thursday, October 25, or Friday, October 26, the plaintiff mailed the motion to the courthouse, resulting in its arrival in the clerk's office on Monday, October 29, 1990. In addition, the plaintiff did not bring the motion to the attention of the judge presiding over the trial; rather he followed the usual procedure for claiming a motion for short calendar. As a result, the motion for protective order did not come to the attention of the trial judge until the defendant attempted to introduce the deposition testimony at trial. Practice Book § 206 gives the court the discretion to dispose of any motion in a case on trial rather than automatically relegating the matter to the short calendar list.[5] See *Udolph* v. *West Hartford Spirit Shop, Inc.,* 20 Conn. App. 733, 736, 570 A.2d 240 (1990) ("[t]he court, in its discretion, could have heard the . . . motion although it was not on the short calendar list"); see also *State ex rel. Bonoff* v. *Evarts,* 115 Conn. 98, 100–101, 160 A. 294 (1932) (trial court can accelerate hearing at its discretion).

---

[5] Practice Book § 206 provides in relevant part: "Unless otherwise provided in these rules or ordered by the court . . . all motions . . . must be placed on the short calendar list. No motions will be heard which are not on said list and ought to have been placed thereon; provided that any motion in a case on trial . . . may be disposed of by the court at its discretion, or ordered upon the short calendar list on terms, or otherwise."

The defendant also did not attempt to expedite the disposition of the motion for protective order. Upon receiving notice of the motion, the defendant could have contacted the court to request immediate consideration of the motion by the trial judge, or contacted the plaintiff to attempt to resolve the problem. She did neither. Instead she waited to contact the plaintiff on the morning of the scheduled depositions, and proceeded to conduct the depositions even though the plaintiff had told her that neither the plaintiff nor his attorney would attend the depositions until after the motion for protective order had been decided.

Neither party in this case is without responsibility. Other courts also have acknowledged the responsibility of both parties for the orderly conduct of depositions. Where one party scheduled a deposition and canceled it when the other party, who had filed a motion for protective order, did not appear, the court reprimanded both parties. *Goodwin* v. *Boston,* 118 F.R.D. 297, 298 (D. Mass. 1988). The court stated that the objecting party should have contacted the other party to arrange a stay until the motion for protective order could be heard or, barring agreement, filed a motion to stay the deposition and alerted the court to the need for immediate action on the motion for a stay. Id. The court also noted that the party seeking the deposition did nothing to alert the court to the need for an immediate decision on the motion for protective order, and did not contact the objecting party before attempting to proceed with the deposition. Id.; see also *Cady* v. *Laws,* 341 So. 2d 1022, 1023 (Fla. App. 1977) ("many of the complaints expressed by the [plaintiffs] could be obviated by the exercise of a modicum of professional courtesy between counsel").

"[W]hat is reasonable notice must depend largely upon the facts and circumstances of each case, and . . . such matters must be left to the wise legal dis-

cretion of the trial court." *Harris's Appeal from Commissioners,* 58 Conn. 492, 494–95, 20 A. 617 (1890); accord *C & F Packing Co.* v. *Doskocil Companies, Inc.,* 126 F.R.D. 662, 678 (N.D. Ill. 1989) ("the most that can be gleaned from the case law is that the reasonableness of notice must be determined under the individual circumstances of each case"); *Hogan* v. *Beckel,* 783 S.W.2d 307, 308 (Tex. App. 1989) ("[w]hether notice is reasonable depends on the circumstances of each case"); *Rovner* v. *Rovner,* 778 S.W.2d 905, 908 (Tex. App. 1989) ("question of whether reasonable notice has been given is within the discretion of the trial court"). Courts, in Connecticut and in other jurisdictions, consider the proximity in time of the scheduled deposition to the trial date and the length of time during which the identity of the deponent has been known in determining whether the notice is reasonable.

In many cases, the court's ultimate ruling assigned considerable weight to the objecting party's filing of a motion for protective order. In *Harris's Appeal from Commissioners,* supra, notice that a deposition was scheduled two days later was held reasonable because the deponent was leaving the state for an extended period, and thus would not be available at the time of trial. The objecting party, however, had taken no steps to postpone the deposition. Id.

In *Mims* v. *Central Manufacturers Mutual Ins. Co.,* 178 F.2d 56 (5th Cir. 1949), the court held that notice served ten days before trial for taking sixteen depositions in ten cities throughout the country on the same day was not reasonable. "There was no real opportunity for a seasonable motion for the protection of the parties . . . ." Id., 59.

The Texas Court of Appeals noted that four days notice was rather short, but concluded that it was not automatically unreasonable where the plaintiff ignored

the notice, did not file a motion for protective order and did not attempt to reschedule the deposition. *Bohmfalk* v. *Linwood,* 742 S.W.2d 518, 520 (Tex. App. 1987).

In *Van Buren* v. *Dendy,* 440 So. 2d 1012 (Ala. 1983), the defendant filed a motion for protective order claiming, inter alia, that "this case has been pending since February of 1982, that the Plaintiff has known at all times that the testimony of these deponents would be critical in this trial but that Plaintiff has postponed the taking of this critical deposition until five (5) days before the trial of this case." Id., 1014. The Alabama Supreme Court ruled that the trial court had properly granted the motion for protective order and stated that "[i]t seems clear that [the plaintiff] was aware, during the entire course of the proceedings in this action, that [the deponent's] testimony would be critical to his case and that [the deponent] resided in Chicago, Illinois. This was not a 'newly discovered' witness." Id.

Where the witness is not discovered or located until shortly before trial, the court will construe the notice requirement more liberally. In *Federal Aviation Administration* v. *Landy,* 705 F.2d 624 (2d Cir.), cert. denied, 464 U.S. 895, 104 S. Ct. 243, 78 L. Ed. 2d 232 (1983), the government gave notice of four working days for the deposition of a witness, located ten days before trial, who would be unavailable at trial. The court held that this notice was reasonable because the defense counsel "neither contacted the government's attorney . . . nor sought expedited relief from the court . . . but rather mailed a motion returnable eleven days later seeking an order vacating the notice." Id., 634.

In the case presently before us, however, the defendant was neither attempting to depose witnesses in anticipation of trial nor seeking to depose a newly discovered witness. The trial had begun on July 5, 1990, and had been continued to July 24, September 14, and

finally, November 9, 1990. The defendant was aware throughout the entire trial period that she wanted to include the testimony of her treating physician and psychotherapists. In anticipation of the fact that they might be unavailable at the time their testimony was required, she could have deposed them at any time during that four month period. The situation here is more egregious than that in *Van Buren* v. *Dendy,* supra, where the plaintiff delayed the deposition until a few days before trial. Here, the defendant waited until after the plaintiff had completed presenting his evidence before giving notice of the depositions.[6]

The trial court ruled that the notice given for these depositions was unreasonable because the notice did

---

[6] Throughout the trial the defendant had attempted to delay and disrupt the orderly court proceedings. The trial court noted several examples in its memorandum of decision. The trial had been scheduled in February, 1990. The parties were notified in May, 1990, that the trial was scheduled for July 5 and 6, 1990. As set out in the memorandum of decision, "before taking the bench [on July 5, 1990], a sheriff came in and handed the court a letter dated July 3, 1990, addressed to this Judicial District's Administrative Judge from the Nassau County District Attorney's Office saying that it was, at the recent request of Mrs. Cahn, reopening its investigation into a possible criminal action against Mrs. Cahn on the charge of bigamy, an affirmation dated June 28, 1990 (whatever that is), from defendant's New York attorney attempting to stop the Connecticut trial, and a letter . . . from the defendant requesting the Connecticut case be dismissed and referred to the New York courts. . . .

"After the opening of court, the court saw only two persons at one counsel table and several persons in the audience area. The plaintiff's attorney said he was ready to proceed. The court stated it had reviewed the pleadings and noted the answer filed by Mrs. Cahn as well as her pro se appearance. Based upon her appearance, answer and the long lead time given to prepare for trial on a specific day, the court, having jurisdiction, would proceed.

"At that moment, a gentleman stepped from the audience area into counsel's space. He introduced himself as the Connecticut attorney for Mrs. Cahn. He handed in an appearance. It should be noted that the attorney's appearance bears a typewritten date of June 22, 1990, but [was] not filed until presented in court on July 5, 1990."

In addition, the defendant was responsible for the lengthy continuances from July 6, 1990, to July 24, 1990, then to September 14, 1990, and finally to November 9, 1990.

not provide the plaintiff with sufficient opportunity to have his motion for protective order heard. The court further ruled that the plaintiff had been prejudiced by not being able to cross-examine the deponents. For these reasons, the trial court did not allow the depositions to be introduced into evidence. See *Mims* v. *Central Manufacturers Mutual Ins. Co.,* supra, 59 (under Federal Rules of Civil Procedure, "reasonable notice" includes an opportunity to obtain a "seasonable motion for the protection of the parties"); *Spangler* v. *Southeastern Greyhound Lines,* 10 F.R.D. 591 (E.D. Tenn. 1950) (closeness in time of taking depositions to trial date should be considererd in deciding reasonableness of notice).

The admissibility of a deposition into evidence under Practice Book § 248 is "permissive in nature, leaving the ultimate determination to the trial judge." *Farrell* v. *St. Vincent's Hospital,* 203 Conn. 554, 565, 525 A.2d 954 (1987). "On appeal, the trial court's rulings on the admissibility of evidence are accorded great deference . . . . [and] will be disturbed only upon a showing of clear abuse of discretion. . . . The party making the claim of error has the burden of showing that the court clearly abused its discretion." (Citations omitted; internal quotation marks omitted.) Id., 565–66.

The trial court considered the actions of the parties when exercising its discretion and determined that, under the facts of this case, the mere filing of a motion for protective order made the notice not reasonable and provided a sufficient basis to exclude the deposition testimony. In these circumstances, the Appellate Court appropriately concluded that the trial court had not abused its discretion in denying the admissibility of the deposition testimony into evidence.

The judgment of the Appellate Court is affirmed.

In this opinion PETERS, C. J., and NORCOTT, J., concurred.

Berdon, J., concurring. I agree that we should affirm the judgment dissolving the marriage of the parties and granting certain other relief. I write separately to elaborate on why I vote to affirm on the certified issue and to express my concern about some of the court's dicta.

Implicit in the certified issue is the question of whether the plaintiff had reasonable notice of the deposition.[1] When notice is unreasonable, as the trial court found in the present case, the fact that a party has filed a motion for protective order should apprise the party seeking to take the deposition that if he or she proceeds without first resolving the motion, there is a risk that the deposition will be rejected at trial for lack of sufficient notice. Any other result may deny the party opposing the deposition a reasonable time period in which to make objections.[2]

I agree that the standard for the admissibility of a deposition into evidence under Practice Book § 248 is "permissive in nature, leaving the ultimate determi-

---

[1] In determining whether the deposition testimony was properly excluded in this case, the Appellate Court necessarily considered the issue of reasonable notice. "In an appeal following certification, the focus of our review is not the actions of the trial court, but the actions of the Appellate Court." (Internal quotation marks omitted.) *Essex Leasing, Inc.* v. *Zoning Board of Appeals,* 206 Conn. 595, 599, 539 A.2d 101 (1988); see also *Nardini* v. *Manson,* 207 Conn. 118, 119–20 n.1, 540 A.2d 69 (1988). Since the Appellate Court's resolution of the certified issue is intertwined with its resolution of the reasonable notice issue; *Cahn* v. *Cahn,* 26 Conn. App. 720, 603 A.2d 759 (1992); our review must address the notice issue as well.

[2] The dissent claims that the reasonableness of the notice was not the basis of the trial court's decision. I read a different record. The record is replete with the trial court's concern about notice. For example, in ruling that the depositions were not admissible, the court stated: "No, I agree with counsel for the [plaintiff] that the notice for depositions were filed much too late. They were dilatory and they are prejudicial.

"Now really, sir, on a case that is a year and a half old . . . there was plenty of time to [take the depositions]. There was plenty of time to do that in August. In fact, I had warned counsel for both sides that if any depositions were to be taken they should be done promptly. And I did that back in July."

nation to the trial judge." *Farrell* v. *St. Vincent's Hospital,* 203 Conn. 554, 565, 525 A.2d 954 (1987). "On appeal, the trial court's rulings on the admissibility of evidence are accorded great deference . . . [and] will be disturbed only upon a showing of clear abuse of discretion. . . . The party making the claim of error has the burden of showing that the court clearly abused its discretion." (Citations omitted; internal quotation marks omitted.) Id., 565–66.

In determining the reasonableness of notice of a deposition to be taken after trial has commenced, the trial court should consider not only the amount of time given to the opposing party, but also whether the party seeking to take the deposition has been diligent. Neither party should be required to attend a deposition at the whim of the other party. See Practice Book § 221. In addition to the amount of notice given to the opposing party, the following are among the factors that the trial court should consider: (1) the date that the case was returned to court; (2) when the party became aware of facts suggesting a deposition would be necessary; (3) the need for the deposition; and (4) the place designated for taking the deposition. The trial court considered these factors in this case.

As Justice Santaniello points out in the majority opinion, on October 22, 1990, counsel for the defendant notified counsel for the plaintiff that depositions of three medical witnesses for the defendant were scheduled to take place nine days later, on October 31, 1990, in Long Island, New York. Counsel for the defendant gave notice of the deposition approximately sixteen months after the action was brought and three and one-half months after the trial commenced. The defendant does not claim that the three witnesses she sought to depose were newly discovered, nor does she allege any other circumstances that would justify such short notice. Moreover, counsel for the defendant admitted that he

knew of the existence of these deponents prior to trial.[3] Indeed, during the entire course of this litigation, dilatory tactics were the norm for the defendant.[4] I therefore agree that the trial court did not abuse its discretion in holding that notice was unreasonable under the circumstances of this case and justified the exclusion of the depositions.

I am concerned about the suggestion, in both the majority and dissenting opinions, that a party deponent must answer all questions asked at a deposition unless the party procures a protective order. They further suggest that the failure to do so would subject the party deponent to sanctions, including the draconian result of dismissal of his or her cause of action. I do not read Practice Book § 247 (b)[5] to require the party deponent to answer every question proposed. Even if § 247 (b) required such a result, I would question its constitutionality. A deponent cannot predict each question that will be asked, and is therefore unable to obtain a protective order for an unanticipated line of questioning. Would the court order sanctions if a party deponent refused to respond to an unanticipated line of questioning involving privileged communications between the party and his or her attorney? Our holding in *Pavlinko*

[3] Counsel for the defendant stated: "Mrs. Cahn has been asking me to do the depositions ever since I first came into [the case], but I did not want to delay. I told her there could be no delay in the trial to do depositions. I didn't think that time frame permitted it." The court replied: "[Y]ou knew on August 3rd that I was going to be out of the courthouse for a month's vacation. You had plenty of time. What happened to August?"

[4] See footnote 6 of the majority opinion.

[5] Practice Book § 247 (b) provides: "All objections made at time of the examination to the qualifications of the officer taking the deposition, or to the manner of taking it, or to the evidence presented, or to the conduct of any party, and any other objection to the proceedings, shall be noted by the officer upon the deposition. Evidence objected to shall be taken subject to the objections. In lieu of participating in the oral examination, parties may serve written questions in a sealed envelope on the party taking the deposition and the party shall transmit the questions to the officer, who shall propound them to the witness and record the answers verbatim."

v. *Yale-New Haven Hospital,* 192 Conn. 138, 470 A.2d 246 (1984), cited in both opinions, must be held to its facts—that is, the plaintiff-deponent refused to answer the question *after* he was given an opportunity to be heard before the trial court, and after he was ordered to answer by the trial court.

Accordingly, I concur in the judgment of the court.

BORDEN, J., dissenting. I confess that it is difficult for me to follow the reasoning of the majority opinion. The majority begins by stating the issue that we certified: "whether the Appellate Court properly concluded that the mere filing of a motion for protective order by a nondeponent is a sufficient basis to exclude deposition testimony from evidence because the deposition was taken before the motion was heard." The opinion then reformulates the issue into a different question: "whether, in the circumstances of this case, a notice of deposition subsequently ruled unreasonable because the notice did not allow the plaintiff to be heard on his motion for protective order permits a court to exclude the deposition testimony from the trial."[1] The majority then answers the *certified* issue, ipse dixit, by stating that "[f]iling such a motion [for a protective order] was a viable means available to [the plaintiff] to prevent the depositions from occurring."

The majority proceeds from there to address the question of whether the plaintiff had taken sufficient steps to expedite a hearing on his motion. Concluding, albeit implicitly, that he had not, the majority answers this difficulty by pointing out that the defendant also could have taken steps to secure a ruling on the motion.

---

[1] Subsequently, however, the majority demonstrates that there was no basis for the factual premise of the *reformulated* issue—namely, that the notice did not allow the plaintiff to be heard on his motion for protective order—because the plaintiff did have ample opportunity to secure a ruling on his motion.

That may be true, but it begs the question of this case, namely, which party had the burden of doing so, and the majority fails to indicate why the defendant had any burden to secure a ruling on her adversary's motion.

The majority then explores the question of the reasonableness of the notice—a question which, as I demonstrate below, was not the basis of either the motion for protective order or the trial court's ruling excluding the deposition testimony at the trial. The opinion then seeks comfort in the facts that, in this case, the defendant was not seeking to depose either pure discovery witnesses or newly discovered witnesses, and that "the defendant waited until after the plaintiff had completed presenting his evidence before giving notice of the depositions." These facts ignore, however, the more significant facts that these depositions were for the purpose of preserving and presenting *trial* testimony of out-of-state witnesses for the defendant; see Practice Book § 248; whose testimony, if it had been presented live during the trial rather than by way of deposition, would not have been presented until after the plaintiff had completed presenting his evidence. I fail, therefore, to see how those facts help the plaintiff's argument in this case.

The majority then appears to reduce the entire case to a question of evidentiary abuse of discretion vel non, as if we were reviewing a ruling by the trial court on whether evidence was relevant or, if relevant, whether its probative value outweighed its prejudicial effect. Relying on *Farrell* v. *St. Vincent's Hospital,* 203 Conn. 554, 565, 525 A.2d 954 (1987), the majority concludes by endorsing the trial court's exercise of discretion in determining that "under the facts of this case, the mere filing of a motion for protective order made the notice not reasonable," and by concluding further, therefore, that the Appellate Court properly determined "that the

trial court had not abused its discretion in denying the admissibility of the deposition testimony into evidence."

This reasoning does not address the issue in this case. I turn, therefore, to what I regard as the proper analysis of this appeal.

The question posed by this appeal is the question of law that we certified: "Did the Appellate Court properly conclude that the mere filing of a motion for protective order by a nondeponent is a sufficient basis to exclude deposition testimony from evidence because the deposition was taken before the motion was heard?" *Cahn* v. *Cahn,* 221 Conn. 924, 608 A.2d 688 (1992). This issue necessarily presents a question of law regarding the appropriate allocation of the burden to secure a ruling on a motion for a protective order. The majority opinion does not analyze this question, and reaches an incorrect conclusion, both on the facts of this case and on the applicable law.

First, the question of the reasonableness of the notice was not the basis—or even one of the bases—of the plaintiff's motion for a protective order. That motion did not challenge the reasonableness of the notice of the deposition. That motion was based instead upon the assertions of the plaintiff that: (1) the depositions were dilatory because the case had been returned to court in February, 1989, and the depositions were to take place in October, 1990; (2) the depositions would be prejudicial because the plaintiff had completed his case; and (3) the nonparty deposition witnesses were to be expert witnesses whom the defendant had not identified as such prior to trial. Moreover, at no time in the trial court—either at trial when the depositions were offered or when the issue was again raised in the defendant's posttrial motion to open the judgment—did the plaintiff claim that he had not been given "reasonable notice" of the depositions as required by Prac-

tice Book § 248. Furthermore, insofar as I can tell, at no time did the trial court find that reasonable notice had not been given—except insofar as it ruled that the defendant had been obligated to notice the deposition in time for the plaintiff to have his motion for protective order heard at a normal short calendar session, a ruling I discuss in more detail below.

Indeed, on the facts of this case, a claim that the notice of the depositions was not "reasonable" (in the sense that the phrase "reasonable notice" is usually understood) is and would have been untenable. This trial, which was being held in Danbury, had begun on July 6, 1990, and at the time of the deposition notice the trial had been continued from September 14, 1990, to November 9, 1990. The notice was given to the plaintiff on October 22, 1990, for the depositions to take place on Long Island on October 31, 1990. The plaintiff's attorney was located in Danbury.

As early as 1910, this court held that eleven days notice given to a New Haven defendant of a deposition to take place in Kansas was reasonable; *Alspaugh* v. *Dillon,* 83 Conn. 65, 72, 75 A. 82 (1910); and in 1890, we considered to be reasonable a one day notice of a deposition to take place in Hartford. *Harris's Appeal from Commissioners,* 58 Conn. 492, 494–95, 20 A. 617 (1890). The plaintiff's attorney in this case had a nine day notice of depositions that were to be taken at a location approximately two to three hours by car from the place of trial and the location of the plaintiff's attorney's office. It can hardly be argued, therefore, that in this day of rapid travel and communication this notice was not reasonable.

I turn, therefore, to what is the issue in this appeal: whether the mere filing of a motion for a protective order seeking to preclude the taking of a deposition of a nonparty witness is sufficient to stay the taking of

that deposition. As a factual matter, it is specious to say that, on this record, the defendant's notice did not give the plaintiff the opportunity to have his motion for protective order heard before the depositions were to be taken. Indeed, the majority recognizes as much. The plaintiff received the notice on October 22, 1990. He did not mail his motion until three days later, October 25, 1990, so that it was not received by the clerk's office until four days after that, October 29, 1990. Thus, it took the plaintiff's counsel seven of the nine days notice period to prepare and file his one page motion in the clerk's office located in the same city as his office.

More significantly, the ruling of the trial court, which both the Appellate Court and the majority opinion endorse, was based on the assumption that the plaintiff's motion was required to be heard on the next short calendar. That assumption is not rooted in the provisions of the Practice Book or in the reality of our trial court practice. This case was already in the midst of trial. Practice Book § 206 provides that "any motion in a case on trial . . . may be disposed of by the court at its discretion . . . ." That section "sets forth the procedures to be followed in order to bring a motion before the court for a hearing . . . . The court need not place a motion on a short calendar list if to do so would delay the proceedings. See *State ex rel. Bonoff* v. *Evarts,* 115 Conn. 98, 100–101, 160 A. 294 (1932)." *Udolf* v. *West Hartford Spirit Shop, Inc.,* 20 Conn. App. 733, 735–36, 570 A.2d 240 (1990).

It is inconceivable to me that any short calendar judge, other than the trial judge actually hearing the case, would have undertaken to hear the plaintiff's motion. That short calendar judge would certainly have referred the motion to Judge Geen, the trial judge here, and it is equally inconceivable to me that the plaintiff's counsel could have been unaware of that certainty. If he was not so aware, he should have been.

That being the case, the plaintiff's counsel should not have simply mailed the motion into court and awaited a short calendar session that could only have produced a reference to Judge Geen. Instead, he could (as the majority opinion acknowledges) and should (as common sense suggests) have arranged to file the motion earlier, and arranged with the clerk to have it brought to Judge Geen's attention for a prompt hearing upon prompt notice to the defendant's counsel. Practice Book § 206.

The facts are not, therefore, that the plaintiff had an insufficient opportunity to have his motion heard before the date of the depositions. The facts are that he had a full eight days (October 22 through October 30) to prepare, file and arrange a hearing on his motion.

As a legal matter, I disagree with the implied holding of the majority opinion, namely, that the legal burden is on the party who notices a deposition to anticipate a motion for protective order and to give the notice long enough before the deposition date so as to permit the opposing party time to have such a motion heard in the ordinary course of the motion practice. This raises the legal issue that we certified, and that should control this case: if, as here, a party has filed a motion for a protective order seeking to preclude a midtrial deposition, and if the movant has a sufficient opportunity to secure a ruling on his motion prior to the proposed date of the deposition, does the filing of the motion, without more, stay the deposition and thus give the movant the right not to attend with impunity? Stated another way, the issue is who—the movant or the party seeking the deposition—has the burden to secure a ruling on the motion for protective order before the proposed deposition date? Contrary to the majority opinion, I would resolve this issue in favor of the party seeking to take the deposition, and place the burden of securing such a ruling on the movant.

Placing the burden on the movant is consistent with our general jurisprudential rules that the party who seeks some form of relief from the court has the burden to take the steps necessary to secure that relief. Except for instances where the rules specifically provide, such as a motion to open a judgment or a motion to reargue staying the time for appeal; see, e.g., Practice Book §§ 4009 and 4050 ; I know of no other situation in which we permit the simple filing of a motion to stay proceedings.

This position, furthermore, is consistent with our analogous Connecticut precedent. In a similar but closely related context, namely, a notice of deposition to an adverse party, we have stated: "Any party may be compelled by notice to give a deposition. Practice Book § 246. *The giving of the notice prescribed by § 244, unless modified by the court, constitutes an order to the deponent to appear at the time and place designated in the notice and to submit to examination and cross-examination as permitted at trial.* Practice Book § 247. All questions, including those objected to, are to be answered; Practice Book § 247 (b); *unless the objecting party procures from the court a protective order precluding or limiting the scope or disclosure of discovery.* Practice Book § 221." (Emphasis added.) *Pavlinko* v. *Yale-New Haven Hospital,* 192 Conn. 138, 143, 470 A.2d 246 (1984).

I cannot see why if, under *Pavlinko,* a party subject to a deposition notice must obtain a court order in order to avoid attendance at the deposition, a different rule should apply where a party has been given the same notice of a deposition of a nonparty witness. Yet, that is what the majority opinion holds.

Furthermore, under the federal rules of civil procedure, upon which our deposition rules are patterned, the general rule is that the movant has the burden to

secure a ruling on a motion for a protective order. "Rule 30 (b) [of the Federal Rules of Civil Procedure] places the burden on the proposed deponent to get an order, not just to make a motion. And if there is not time to have his motion heard, the least that he can be expected to do is to get an order postponing the time of the deposition until his motion can be heard. He might also appear and seek to adjourn the deposition until an order can be obtained. . . . But unless he has obtained a court order that postpones or dispenses with his duty to appear, that duty remains." *Pioche Mines Consolidated, Inc.* v. *Dolman,* 333 F.2d 257, 269 (9th Cir. 1964), cert. denied, 380 U.S. 956, 85 S. Ct. 1081, 13 L. Ed. 2d 972 (1965); *Federal Aviation Administration* v. *Landy,* 705 F.2d 624, 634 (2d Cir.), cert. denied, 464 U.S. 895, 104 S. Ct. 243, 78 L. Ed. 2d 232 (1983) ("it is not the filing of such a motion [for a protective order] that stays the deposition, but rather a court order"). Indeed, in *Goodwin* v. *Boston,* 118 F.R.D. 297 (D. Mass. 1988), upon which the majority opinion relies in part, the court, *in ruling for the party seeking to take the deposition,* stated: "The filing of a motion to quash or a motion for protective order does not automatically operate to stay a deposition or other discovery. When it appears that a Court is not going to be able to decide a motion to quash or a motion for protective order before the date set for a deposition, counsel for the movant should contact counsel for the party noticing the deposition and attempt to reach an agreement staying the deposition until after the Court acts on the motion . . . . If agreement cannot be reached, it is incumbent on counsel for the movant to file a motion to stay the deposition until the Court acts on the motion to quash and/or for a protective order and to alert the clerk to the need for immediate action on the motion to stay." Id., 298.

The three cases upon which the majority opinion principally relies are distinguishable. In *Mims* v. *Central*

*Manufacturers Mutual Ins. Co.,* 178 F.2d 56 (5th Cir. 1949), the trial was set for October 12, 1948, in Alabama. On October 2, the defendants noticed depositions of fifteen witnesses on October 6, and one witness on October 9, in New York, Boston, Chicago, San Francisco, St. Louis, Alliance, Ohio, Cincinnati, Baltimore, Philadelphia, Birmingham and Dallas. Id., 58. On these "unusual features present in the record"; id., 59; the court held that the plaintiff's immediate letter to the defendants' counsel objecting to the depositions on the grounds that the notice was not reasonable was sufficient to preclude the admission of the depositions into evidence.

In *Spangler* v. *Southeastern Greyhound Lines,* 10 F.R.D. 591 (E.D. Tenn. 1950), the court was ruling on the motion for a protective order prior to the taking of the depositions noticed. Thus, the issue presented by this case—upon whom does the burden lie to secure a ruling on such a motion—was not present.

Finally, *Farrell* v. *St. Vincent's Hospital,* supra, does not control here. In *Farrell,* the discretionary ruling of the trial court was that the probative value of the deposition testimony was outweighed by its inclination to confuse the jury. Id., 565. The issue in this case, despite the majority's attempt to recast it in discretionary terms, is a legal issue regarding the allocation of the burden to secure a ruling on a motion for protective order in order to forestall a reasonably noticed midtrial deposition. That is the issue we certified, and that is the issue we ought to answer. I would do so by allocating the burden to the movant.

I therefore dissent, and would reverse the judgment of the Appellate Court and order a new trial.